**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No.  CR12-4101-LTS |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| CESAR RAMOS, | |
| Defendant. | |

_____

## I.      INTRODUCTION

This matter is before me on defendant Cesar Ramos' motion (Doc. 55) and amended motion (Doc. 68) for compassionate release.  I filed an initial review order appointing counsel and directing the Government to respond on April 20, 2021.  Doc. 56.  Ramos' counsel filed an *Anders* brief (Doc. 69),[1] to which the Government has responded (Doc. 72).  Oral argument is not necessary.  *See* Local Rule 7(c).

---

[1] Counsel filed the brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), which allows an attorney to file a brief when the attorney believes the "case [is] wholly frivolous, after a conscientious examination of it." *Id.* at 744.  While *Anders* generally applies to appeals, I have allowed appointed compassionate release counsel to file briefs pursuant to *Anders*.  However, the same general rules apply; namely, that *Anders* applies to meritless claims, and counsel is ineffective if counsel does not sufficiently brief the issue as an advocate. *Evans v. Clarke*, 868 F.2d 267, 269 (8th Cir. 1989) (noting that "[w]here issues of arguable merit are present . . . *Penson* holds that appellate review cannot take place without a fully adversarial briefing by counsel." (citing *Penson v. Ohio*, 488 U.S. 75 (1988))).  In this case, there is a question of whether Ramos' claim is completely meritless or just weak.  Regardless, counsel has sufficiently advocated for Ramos' compassionate release pursuant to his family circumstances, as counsel cited appropriately to case law and to the record. *See Anders*, 386 U.S. at 744 (requiring *Anders* briefs to "refer[] to anything in the record that might arguably support the appeal.").

## II.     BACKGROUND

On September 11, 2013, Ramos was sentenced to 180 months' imprisonment after he pleaded guilty to one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).  Doc. 48.  Ramos is 32 years old.  According to the online Bureau of Prisons (BOP) inmate locator, he is incarcerated at FCI Butner Medium I in Butner, North Carolina, and has a projected release date of March 22, 2027.

## III.     COMPASSIONATE RELEASE STANDARDS

A court's ability to modify a sentence after it has been imposed is extremely limited.  One way a court may modify a sentence is through "compassionate release" as outlined in 18 U.S.C. § 3582(c)(1)(A), which was modified by the First Step Act of 2018 (FSA).  *See* Pub. L. No. 115-391, § 603.  In the past, 18 U.S.C. § 3582(c)(1)(A) permitted a court to reduce a defendant's term of imprisonment only upon the motion of the Director of Bureau of Prisons (BOP).  The FSA modified § 3582(c)(1)(A) such that a defendant may now directly petition the court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *See Mohrbacher v. Ponce*, No. CV18-00513, 2019 WL 161727, at *1 (C.D. Cal. Jan. 10, 2019) (discussing modifications made to § 3582(c)(1)(A) by the FSA); *see also United States v. Perez-Asencio*, No. CR18-3611, 2019 WL 626175, at *2–3 (S.D. Cal. Feb. 14, 2019).

If a defendant fully exhausts administrative remedies, the court may, upon motion of the defendant, reduce the defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, if the court finds that:

(i) extraordinary and compelling reasons warrant such a reduction; or

2

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

And that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . .

18 U.S.C. § 3582(c)(1)(A). Ramos does not meet the requirements of § 3582(c)(1)(A)(ii), as he is under 70 years of age and has not served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c). *See* Doc. 48. Thus, his only possible avenue for relief is § 3582(c)(1)(A)(i), which he invokes due to his family circumstances. Doc. 69 at 7.

The starting point in determining what constitutes "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i) is the Sentencing Guideline discussing compassionate release issued by the United States Sentencing Commission. *See* U.S.S.G. § 1B1.13; *see also United States v. Hall*, No. CR98-7, 2019 WL 6829951, at *3 (E.D. Ky. Dec. 13, 2019); *United States v. Rivernider*, No. CR10-222, 2019 WL 3816671, at *2 (D. Conn. Aug. 14, 2019). The Guideline provides that extraordinary and compelling reasons exist for family circumstances due to:

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13 cmt. n.1(C).

This Guideline predates the FSA and has "not been amended to reflect that, under the FSA, a defendant may now move for compassionate release after exhausting administrative remedies." *Rivernider*, 2019 WL 3816671, at *2. Courts are split on whether the policy statement is binding because it predates the FSA's changes to 18 U.S.C. § 3582(c)(1)(A). A number of district courts have concluded that Guideline §

3

1B1.13 cmt. n.1 does not restrain a court's assessment of whether extraordinary and compelling reasons exist to release a defendant. *See, e.g.*, *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019); *United States v. Urkevich*, No. CR03-37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019); *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019); *United States v. Fox*, No. CR14-03, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019). Other courts have concluded that extraordinary and compelling reasons exist only if they are included in the Guideline. *See, e.g.*, *United States v. Lynn*, No. CR89-0072, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019).

As I have previously stated, I agree with those courts that have found that although the Guideline provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the recent statutory changes. *See United States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020); *see also Rodriguez*, 424 F. Supp. 3d at 682 (Congress knew that the BOP rarely granted compassionate release requests prior to the FSA, and the purpose of the FSA is to increase the number of compassionate release requests granted by allowing defendants to file motions in district courts directly even after the BOP denies their request); *Brown*, 411 F. Supp. 3d at 451 (same).[2]

---

[2] The Eighth Circuit Court of Appeals has declined to expressly overrule the current version of § 1B1.13. But it has indicated that district courts should consider extraordinary and compelling reasons outside the strict confines of § 1B1.13. In a case appeal from the denial of a compassionate release motion, the defendant argued the district court erred by relying on the § 1B1.13 policy statements. In declining to consider that issue, the Eighth Circuit noted that the district court was clearly aware of the change of the law:

> While some courts adhere to "the pre-First Step Act policy statements," "[o]ther courts [have] ruled that the pre-First Step Act policy statements are inapplicable, and that a judge has discretion to determine, at least until the Sentencing Commission acts, what qualifies as 'extraordinary and compelling reasons.'" *Id.* (citing *United States v. Brown*, 411 F. Supp. 3d 446, 448–51 (S.D. Iowa Oct. 8, 2019)). . .

## IV.    DISCUSSION

When analyzing a compassionate release motion, I must first consider whether the defendant has both (1) exhausted administrative remedies and (2) demonstrated that there are extraordinary and compelling circumstances warranting early release.  If so, then I

---

> After analyzing whether Rodd satisfied the "extraordinary and compelling reasons" criteria set forth in § 1B1.13, the district court assumed that Rodd satisfied a more expansive definition of the phrase and analyzed the compassionate-release motion under 18 U.S.C. § 3553(a).  Specifically, the court stated, "Even assuming Congress intended to expand the use of compassionate release with the First Step Act, the Section 3553(a) factors present at sentencing have not changed. Rodd does not qualify for compassionate release."  *Id*.

*United States v. Rodd*, 966 F.3d 740, 745 (8th Cir. 2020).  The Eighth Circuit also stated:

> We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13.  The district court knew its discretion.  It expressly stated that "[e]ven assuming Congress intended to expand the use of compassionate release with the First Step Act, the Section 3553(a) factors present at sentencing have not changed" and, as a result, "Rodd does not qualify for compassionate release." *Rodd*, 2019 WL 5623973, at \*4; *see also id*. ("[E]ven assuming a more expansive definition of 'extraordinary and compelling reasons' under the First Step Act, Rodd's Motion is denied.").  In other words, the district court assumed that Rodd's health and family concerns constituted extraordinary and compelling reasons for compassionate release.  Therefore, we need only determine "whether the district court abused its discretion in determining that the § 3553(a) factors weigh against granting [Rodd's] immediate release."

*Id*. at 747.  In a footnote, the court also observed: "As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future.' *United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019)." *Id*. at 747 n.7; *see also United States v. Loggins*, 966 F.3d 891, 893 (8th Cir. 2020) (noting that § 1B1.13 does not reflect the current version of the compassionate release statute but finding no error because "[w]here the [district] court expressly considered post-sentencing rehabilitation (a circumstance not listed in § 1B1.13), the more natural inference is that the court did not feel constrained by the circumstances enumerated in the policy statement, but simply found that a non-retroactive change in [sentencing] law did not support a finding of extraordinary or compelling reasons for release.").

must also consider whether the 18 U.S.C. § 3553(a) factors weigh in favor of early release. *See* 18 U.S.C. § 3582(c)(1)(A); *see also Rodd*, 966 F.3d at 748.

## A.    *Exhaustion of Administrative Remedies*

A defendant seeking compassionate release may directly petition the district court for a sentence reduction "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Ramos submitted an initial request to his warden asserting grounds (medical issues) different from those he raises in his motion. Doc. 55 at 12, 14. Ramos now states that his minor children no longer have a family caregiver due to their mother's incarceration. *Id.* at 4. He alleges that no other family member is available to care for them and that they reside with a social worker under the supervision of the Texas Department of Family Services. *Id.* He also indicates that he has engaged in rehabilitation while incarcerated. *Id.* at 6–7.

However, on July 2, 2021, Ramos filed a second request with his warden "based upon [his] need to care for his two minor children after the incarceration of their mother." Doc. 69 at 6; Doc. 69-4. An attorney at FCI Butner responded to the request and asked for records about: "Ms. Ramos's conviction, whether the children's grandparents were able to provide care for them, and whether Mr. Ramos's parental rights had been or would be terminated." Doc. 69 at 6. The warden has not made a final determination; however, over 30 days have lapsed from the warden's receipt of Ramos' request. *Id.* Thus, I find that Ramos has exhausted his administrative remedies such that I have authority to consider his motion for compassionate release.

## B.    *Extraordinary and Compelling Reasons*

Ramos claims that extraordinary and compelling reasons exist for his early release because his wife, Kassandra Ramos, has been incarcerated and he should be released to

care for their two children who were previously under her care. Thus, his motion is based on the Guidelines comment that, as noted above, provides that extraordinary and compelling reasons may exist due to "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C)(i)-(ii).

Ramos notes that he has two children with Ms. Ramos and that she was their primary caregiver after he was incarcerated. Doc. 69 at 7. Ms. Ramos and the two children moved to Hidalgo County, Texas, with her boyfriend. *Id*. In 2017, Ms. Ramos was indicted "for having intentionally, knowingly, or by omission causing serious bodily injury to a child younger than 15 years of age by failing to protect him from injuries caused by [her boyfriend]." *Id*. This child was a half-sibling of the two Ramos children, and later died of his injuries. *Id*. Prior to her indictment, "Child Protective Services in Texas determined that the remaining children were at risk of injury and placed them in foster care under exigent circumstances." *Id*. Ramos' two children have been in foster care ever since. *Id*. at 8. Ms. Ramos was convicted on May 14, 2018, and given a 15-year prison sentence. *Id*. at 7-8.

On the surface, these circumstances may seem to fit § 1B1.13 cmt. n.1(C) ("incapacitation of the caregiver of the defendant's minor child or minor children"). However, Ramos' argument is impacted, if not all together defeated, by the fact that the State of Texas terminated his parental rights in 2019. *See* Doc. 69 at 9; Doc. 69-6 at 24, 31.[3] Following the termination of all parties' parental rights, only the children's mother appealed. *Id*. at 23, 30. That appeal is still in process and the children remain in foster care, possibly awaiting adoption if Ms. Ramos' appeal is unsuccessful. *Id*. at 22, 29.

---

[3] The legal log for the younger child states "Parental Rights Terminated on father," while the legal log for the older child states "Parental Rights Terminated on all parties." *Id*. Ramos acknowledges that he currently does not have parental rights to either child. Doc. 69 at 9.

7

Based on these facts, I find that Ramos is not a suitable caregiver for the two children, as he does not have parental rights, let alone legal custody, to either of them and has not provided evidence showing he will regain custody upon release. *See United States v. Paul*, No. 18-cr-00227, 2020 WL 5807343, at \*2 (S.D. W. Va. Sept. 25, 2020) (caregiving suitability is "implicitly required" under U.S.S.G. § 1B1.13 cmt. n.1(C)(i) and the defendant could not make this showing because there was no evidence that he had parental or custodial rights over his children already in foster care); *United States v. Johnson*, No. 15-cr-00059, 2020 WL 6075867, at \*5 (E.D. Cal. Oct. 15, 2020) (defendant did not establish that he was a suitable caretaker by making unsupported assertions of suitability and failing to show he had "any custodial rights with respect to his child or whether, if released, those rights would be recognized and he would actually be awarded custody of his son"); *United States v. Dawkins*, No. 08-412, 2021 WL 1946662, at \*3-4 (W.D. Pa. May 14, 2021) (relying on *Paul* and *Johnson* to hold "that a defendant must demonstrate suitability to become a caregiver in order to provide the existence of extraordinary and compelling reasons pursuant to U.S.S.G. § 1B1.12 cmt. n.1(C)(i)").

Ramos claims his intention if released "is to pursue custody of his children vigorously, and his goal is to gain partial or complete custody so that he may raise the children himself." Doc. 69 at 9. He does not explain how he plans on doing so or address the likelihood of regaining parental rights and legal custody under Texas law. Nor does he explain why he did not seek compassionate release in 2018, after Ms. Ramos was convicted, or why he did not appeal the termination of his parental rights in 2019. Based on the record before me, Ramos has plainly failed to demonstrate that he would be able to establish parental rights and legal custody over his children if released from prison. As such, he has failed to show extraordinary and compelling circumstances that could justify compassionate release.

## C. Section 3553(a) Factors

As noted above, even if Ramos could show that there are extraordinary and compelling circumstances that may justify compassionate release, I would have to consider whether the § 3553 factors support that release. 18 U.S.C. § 3582(c)(1)(A). They do not.

In this case, Ramos participated in three controlled sales of methamphetamine. Doc. 43 at 4, ¶¶ 7-10. After arranging a fourth controlled buy, officers executed a search warrant at Ramos' home. *Id.* at ¶ 11. Officers were barred from the house and had to physically breach the door. *Id.* Once inside, they found Kassandra Ramos and the two children, along with Ramos, inside the house. *Id.* They also found a loaded High Point 9mm handgun with the serial number obliterated. *Id.* Ramos ultimately admitted involvement with at least 50 grams of actual methamphetamine. *Id.* at ¶ 15. The fact that Ramos sold methamphetamine and kept a loaded handgun in the home he shared with his wife and their two young children is aggravating.

Ramos' history of violence is also aggravating. As a teenager, he joined the Florencia 13 Gang. Doc. 43 at 3, 9, ¶¶ 5, 46. He and other gang members were involved in a drive-by shooting in 2005 when he was 16 years old. *Id.* at 7, 9, ¶¶ 34, 46. This shooting targeted an occupied residence and Ramos was convicted of intimidation with a dangerous weapon and criminal gang participation. *Id.* at 7, ¶ 34. In 2011, he was convicted of third-degree domestic assault after he broke into an apartment in which Kassandra Ramos was residing while the two were separated, ultimately assaulting her by hitting her on her neck and head and punching her in the face. *Id.* at 7, ¶ 36. Ramos returned to the apartment the following day and again assaulted Ms. Ramos. *Id.*

In addition to these aggravating factors, Ramos' statutory minimum at sentencing was 15 years in prison. Doc. 43 at 11, ¶ 62. That is the sentence he received and he has only served about 9 years of that 15-year sentence. *Id.* at 3, ¶ 2. While the fact that Ramos has not yet served the minimum sentence allowed by law does not preclude compassionate release, it is another factor that weighs against release.

9

There are mitigating factors, including methamphetamine addition. Doc. 69 at 10-11. In addition, Ramos has taken positive steps while incarcerated. *Id*. at 11. However, these factors do not come close to outweighing the significant aggravating factors described above. Thus, even if Ramos could show that there are extraordinary and compelling circumstances that might justify compassionate release, the § 3553(a) factors would not support early release.

## V. CONCLUSION

For the reasons discussed herein, Ramos' motion (Doc. 55) and amended motion (Doc. 68) for compassionate release are both **denied**.

**IT IS SO ORDERED.**

**DATED** this 1st day of October, 2021.

_____
Leonard T. Strand, Chief Judge